# ABRAMS ⒶⒻ FENSTERMAN

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP

Attorneys at Law
www.abramslaw.com

3 Dakota Drive - Suite 300
Lake Success, New York 11042
Phone: 516-328-2300
Fax: 516-328-6638
FAX NOT FOR LEGAL SERVICE

Matthew F. Didora, Esq.
Partner
mdidora@abramslaw.com

FIRM OFFICES

Brooklyn
New York
Rochester
White Plains

July 16, 2020

By ECF
Hon. LaShann DeArcy Hall, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Courtroom 4H North
Brooklyn, New York 11201

Re:   *Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP v. Valley Forge Insurance Co., et al.*,
Case No. 1:20-cv-02941-LDH-LB

Dear Judge DeArcy Hall:

Plaintiff, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, appearing *pro se*, submits this letter pursuant to your Individual Practices, Section III.A.5, in response to defendants Valley Forge Insurance Company and CNA Financial Corporation's pre-motion conference letter dated July 9, 2020.

This is an action for declaratory judgment resulting from defendant Valley Forge's bad-faith denial of Abrams Fensterman's claim for business interruption coverage pursuant to the terms of a policy issued by defendants for losses sustained as a result of the COVID-19 virus. Abrams Fensterman is a full-service commercial law firm that employs approximately 220 attorneys and non-attorney support staff at four office locations in Brooklyn, Long Island, White Plains, and Rochester.

On or about January 28, 2020, Abrams Fensterman entered into a contract of insurance with Valley Forge designated policy number B602468963 for the period January 28, 2020, to January 28, 2021, pursuant to which Valley Forge agreed to pay for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resolving from a Covered Cause of Loss" (the "Policy"). "Covered Property" is defined to include the four physical locations where Abrams Fensterman maintains offices. In addition, the Policy provides "Civil Authority" coverage, which applies to actual loss of business income sustained and reasonable and necessary extra expenses incurred as a result of any action by a civil authority prohibiting access to any of the Abrams Fensterman offices. Notably, the Policy does not include any exclusion for viruses or pandemics.

Hon. LaShann DeArcy Hall, U.S.D.J.
July 16, 2020
Page 2

---

On a motion to dismiss pursuant to Rule 12(b)(6), the Court will accept as true all claims raised in the complaint, drawing all reasonable inferences in favor of the party against whom dismissal is sought. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). The complaint will not be dismissed unless it can be shown that the plaintiff will be unable to set forth any facts which would allow him or her to prevail in the case. *Nettis v. Levitt*, 241 F.3d 186, 191 (2d Cir. 2001). The issue before the Court on such a motion is not whether the plaintiff would ultimately prevail, but more basically, whether plaintiff is entitled to offer any evidence to support the claims alleged in the complaint. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).

Defendants argue that Abrams Fensterman has not alleged and will not be able to prove that they meet the Policy's definition of "direct physical loss of or damage to" their property. However, courts have recognized that "physical loss or damage is not limited to structural damage. *See, e.g., Motorists Mutual Ins. Co. v. Hardinger*, No. 04-1750, 2005 WL 1163426, at *1 (3rd Cir. May 18, 2005) (holding that infectious bacteria present in a household water system could constitute direct physical loss). Abrams Fensterman's complaint alleges that "four separate Abrams, Fensterman employees tested positive for COVID-19" at "three of the four offices covered by the Policy" (Compl. ¶ 17), and that "Abrams, Fensterman closed all of its offices to have them disinfected with the product Bio Protect, which is designed to protect against germs, bacteria, and viruses for 90 days." (Compl. ¶ 19). Those allegations, when proven, would allow Abrams Fensterman to prevail in the case. *See King*, 189 F.3d at 287.

Defendants rely on CDC guidelines stating that "[c]oronaviruses on surfaces and objects naturally die within hours to days" as support for their argument that the presence of the virus in buildings could not constitute "physical loss of or damage" to property. However, the cited guidance from the CDC, which was not issued until May 7, 2020, is in direct contrast to earlier guidance from the CDC that the virus could exist on surfaces for weeks at a time. *See, e.g.,* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm?s_cid=mm6912e3_w (in study of cruise ship infections finding that "a variety of surfaces in cabins of both symptomatic and asymptomatic infected passengers up to 17 days after cabins were vacated"). Indeed, Mayor DeBlasio in a March 16, 2020 Emergency Executive Order imposed strict restrictions on restaurants, venues and gyms, among other businesses, specifically "because the virus physically is causing property loss and damage." *See* NYC Exec. Order. No. 100, at 2 (Mar 16, 2020), available https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf This issue, which likely requires expert testimony, is not something the Court can determine on a motion to dismiss.

Moreover, there is no binding authority that closures due to COVID-19 cannot constitute "physical loss of or damage" to property. Defendants rely on *Social Life Magazine v. Sentinel Insurance Company Limited*, Index. No. 20 Civ. 311 (VEC) (S.D.N.Y. May 14, 2020). However, the Court's decision in *Social Life* only denied a motion by an

Hon. LaShann DeArcy Hall, U.S.D.J.
July 16, 2020
Page 3

---

insured for a preliminary injunction seeking the extraordinary relief of having an insurer immediately cover a publication's financial losses. There was no final determination on the merits, nor would any such decision of the SDNY be binding on this Court. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), also relied on by Defendants, did not involve the physical presence of a deadly virus causing the closure of a building, but rather a disruption of service because of power outages.

However, in cases where the presence of a harmful antigen caused closure, courts have found "physical loss of or damage" to property. In *Motorists Mutual Ins. Co. v. Hardinger*, No. 04-1750, 2005 WL 1163426, at *1 (3rd Cir. May 18, 2005), the court held that infectious bacteria present in a household water system could constitute direct physical loss and denied summary judgment for the insured. In *Gregory Packing, Inc. v. Travelers Property*, No. 2:12-cv-04418, 2014 WL 6675934, at *1 (D.N.J. Nov. 25, 2014), the court held that the ammonia discharge did inflict "direct physical loss of or damage to" the facility as there was "no genuine dispute that the ammonia release physically transformed the air within Gregory Packaging's facility so that it contained an unsafe amount of ammonia or that the heightening ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated."

Defendants also argue that Abrams Fensterman failed to state a plausible claim to "civil authority" coverage because it requires "direct physical loss of or damage to property at locations, other than the described premises." However, the Governor's Executive Orders ordered the closure of all state courts except as to non-essential matters because of the presence of COVID-19, and ordered all other non-essential offices, including Abrams Fensterman's offices, closed. Abrams Fensterman's Brooklyn office is located less than a quarter-mile from Brooklyn Supreme Court. Thus, the closure of the courthouse and all other non-essential offices is sufficient to invoke this coverage.

Finally, Defendants contend that CNA is not a proper party. However, the complaint alleges that CNA is the parent of Valley Forge, and all communications with Abrams Fensterman regarding the enforceability of the Policy came from CNA, indicating that CNA directed the course of conduct for Valley Forge.

For these reasons and for reasons that will be set forth fully in response to any motion, Defendants' motion will be denied. Thank you for your attention to this matter.

Respectfully Submitted,

MATTHEW F. DIDORA
For the Firm

CC: H. Christopher Boehning (via ECF)