UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ABRAMS, FENSTERMAN, FENSTERMAN,
EISMAN, FORMATO, FERRARA, WOLF &
CARONE, LLP,

        Plaintiff,

v.

VALLEY FORGE INSURANCE COMPANY and
CNA FINANCIAL CORPORATION,

        Defendants.

**MEMORANDUM AND ORDER**
20-cv-2941 (LDH)(LB)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

 Plaintiff Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone LLP ("Abrams Fensterman")[1] brings the instant action against Defendants Valley Forge Insurance Company ("Valley Forge") and CNA Financial Corporation ("CNAF") seeking a declaratory judgment that: (1) the presence of the COVID-19 virus in its offices constitutes physical damage under its insurance coverage policy; (2) New York Governor Cuomo's March 22, 2020 Executive Order constitutes an act of civil authority under its insurance coverage policy; and (3) Plaintiff is entitled to reimbursement (up to its policy limit) and any further relief

---

[1] Plaintiff purports to proceed *pro se* pursuant to 28 U.S.C. § 1654. However, "lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.'" *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Cty.*, 506 U.S. 194, 202 (1993)). In any event, because Plaintiff here is a law firm partnership and all filings have been made by attorneys, the Court will not treat Plaintiff as a *pro se* litigant. *See Breindel & Ferstendig v. Willis Faber & Dumas Ltd.*, No. 95 CIV. 7905 (SHS), 1996 WL 413727, at *5 (S.D.N.Y. July 24, 1996) ("Although pleadings by a party proceeding *pro se* ordinarily are construed extremely liberally, the same does not hold true where the *pro se* party is an attorney or *law firm*." (internal citations omitted) (emphasis added)); *cf. Larsen v. JBC Legal Grp., P.C.*, 533 F.Supp.2d 290, 295 n.2 (E.D.N.Y. 2008) ("[T]he rules afforded pro se litigants are not relaxed when that litigant is also an attorney").

the Court deems just. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[2]

Plaintiff is a full-service commercial law firm with offices in Brooklyn, Long Island, White Plains, and Rochester, New York. (Compl. ¶ 8, ECF No. 1-3.) In March 2020, New York State began to experience the effects of the COVID-19 pandemic. (*Id.* ¶ 16.) And on March 22, 2020, New York Governor Cuomo issued an Executive Order closing all non-essential businesses (the "Executive Order"). (*Id.* ¶ 20.) The Executive Order specifically provided:

> All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m.

(Cleary Decl. Supp. Defs.' Mot. Dismiss ("Cleary Decl."), Ex. B at 2, ECF No. 10-4.)[3] According to Plaintiff, the Executive Order mandated the closure of Plaintiff's four offices. (Compl. ¶¶ 20–21.) At some point during the pandemic, four of Plaintiff's employees, who worked at three of its four offices, tested positive for the COVID-19 virus. (*Id.* ¶ 17.) Plaintiff closed all its offices to have them disinfected. (*Id.* ¶ 19.)

### A.     The Policy

In or around January 28, 2020, Plaintiff entered into an insurance contract (the "Policy") with Defendant Valley Forge, a foreign corporation authorized to issue insurance policies in New

---

[2] The following facts are taken from the complaint and are assumed to be true for purposes of deciding the instant motion.

[3] The Court takes judicial notice of the Executive Order. *See Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 168, 173 (S.D.N.Y. 2020) ("New York did so through several executive orders, of which the Court takes judicial notice."); *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("We also take judicial notice of relevant matters of public record.")

York, whose parent company is Defendant CNAF. (*Id.* ¶¶ 5–6, 11.) The Policy was effective from January 28, 2020, to January 28, 2021. (*Id.* ¶ 11.)

Pursuant to the Policy, as set forth in the Business Owners Special Property Coverage Form (SB-146801-1), Plaintiff is entitled to coverage of certain expenses resulting from business interruptions. (Cleary Decl., Ex. A at 17, ECF No. 10-3.)[4] Generally, the Policy provides "[Valley Forge] will pay for direct physical loss of or damage to the Covered Property . . . caused or resulting from a Covered Cause of Loss." (*Id.*) According to the terms of the Policy, the "Covered Property" refers to the four locations Plaintiff maintains its offices in New York and the "Covered Causes of Loss" is defined as "risks of direct physical loss." (Compl. ¶ 12; Cleary Decl. Ex. A at 17–19.) In relevant part here, the Policy more specifically provides for "Business Income," "Extra Expense," and "Civil Authority" coverage, all of which require, in some respect, "direct physical loss of or damage to property." The Business Income provision states, in part:

> [Valley Forge] will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.[5]

(Cleary Decl. Ex. A at 39.)

The Extra Expense provision provides, in part:

---

[4] The Policy has been incorporated into the complaint by reference. (*See, e.g.*, Compl. ¶¶ 11–15.) "It is well established that '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.'" *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

[5] The term "suspension" is defined to mean "[t]he partial or complete cessation of your business activities" or "[t]hat a part of all of the described premises is rendered untenantable." (Cleary Decl. Ex. A. at 36.) The phrase "period of restoration" refers to the "period of time" that "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises" and "[e]nds on the earlier of . . . (1) [t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) [t]he date when business is resumed at a new permanent location." (*Id*. at 34.)

3

> [Valley Forge] will pay Extra Expense (other than the expense to repair or replace property) to: [1] Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or [2] Minimize the "suspension" of business if you cannot continue "operations."

(*Id.* at 40.) Notably, the term "Extra Expense" within this provision is defined as:

> [R]easonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

(*Id.*)

Additionally, the Civil Authority coverage provides, in part:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of *civil authority that prohibits access to the described premises*. The civil authority action must *be due to direct physical loss of or damage to property* at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(*Id.* at 63 (emphasis added).)

Plaintiff paid in full all premiums required by the Policy, and the Policy has remained in effect since its issuance. (Compl. ¶ 15.) The Policy did not include any exclusions for viruses or pandemics. (*Id.* ¶ 14.)

On April 1, 2020, Plaintiff submitted a claim for business interruption coverage to Valley Forge under their Policy for the losses sustained related to the COVID-19 pandemic. (*Id.* ¶ 1, 22.) Defendant Valley Forge investigated the claim for approximately two months. (*Id.* ¶ 23.) On or about May 27, 2020, Defendant denied Plaintiff's claim for business interruption insurance coverage. (*Id.* ¶¶ 2, 24.)

4

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of defendants' liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true[.]" *Id.* (citation omitted).

**DISCUSSION**

A.  **Business Income and Extra Expense Coverage Provisions**

Defendants argue the Business Income and Extra Expense claims should be dismissed because Plaintiff fails to allege any suspension of business operations caused by "direct physical loss of or damage to" the insured premises, as required by the Policy. (Defs.' Mem. L. Supp. Defs.' Mot. Dismiss Compl. ("Defs.' Mem.") at 1, ECF 10-1.) The Court agrees.

Under New York law,[6] "[a]n insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d

---

[6] In their motion to dismiss, Defendants argue New York law applies. (Defs.' Mem. at 7–8.) Plaintiff does not directly respond, but refers the Court to New York law in its opposition. (*See, e.g.*, Pl.'s Mem. Law in Opp'n to Defs.' Mot. to Dismiss Compl. at 7, ECF 10-9 ("Pl.'s Opp'n").) Accordingly, it appears both parties agree that New York law applies. "This shared premise is sufficient to establish the applicable choice of law." *Deer Mountain Inn LLC v. Union Ins. Co.*, No. 1:20-cv-0984 (BKS/DJS), 2021 WL 2076218, at *5 (N.D.N.Y. May 24, 2021) (internal quotation marks omitted) (citing *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see also*

675, 680, 37 N.E.3d 78 (N.Y. 2015). As such, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Id.*; *see also Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) ("[t]he initial interpretation of a contract 'is a matter of law for the court to decide.'"). Interestingly, neither Plaintiff nor Defendant contend that the Policy is ambiguous in any way. Instead, both maintain that their urged position is supported by the plain meaning of the Policy. Specifically, Defendants argue that the plain language of the Policy makes clear the mere loss of use of a covered property does not trigger coverage, but rather, there must be actual, physical damage to the premises. (Defs.' Mem. at 9–10.) In opposition, Plaintiff argues the plain language of the Policy does not require physical or structural damage to adequately plead a covered loss. (Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss Compl. ("Pl.'s Opp'n") at 7–8, ECF 10-9.) Plaintiff argues, in the alternative, that to the extent the Policy does require structural damage, Plaintiff experienced such damage because of the confirmed presence of COVID-19 in three of its offices. (Pl.'s Opp'n at 14.) Only Defendant is correct.

Under both the Business Income and Extra Expense provisions, the Policy provides coverage when business operations are suspended due to direct physical loss of or damage to the covered property. (Cleary Decl. Ex. A at 17–18.) The policy, itself does not define "direct physical loss of or damage to property." Still, the import of this language presents no mystery. "Physical" is defined as "relating to, or involving material things; pertaining to real, tangible objects," and "loss" is defined as "[t]he failure to maintain possession of a thing." *Physical*, *Loss*, Black's Law Dictionary (11th ed. 2019). Taken together, and as Defendants argue, a plain reading of the provision makes clear the loss or damage must be tangible or concrete. *See, e.g.*,

---

*Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'").

6

*Michael Cetta, Inc. v. Admiral Indem. Co*., 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020) (collecting cases) ("The plain meaning of the phrase 'direct physical loss of or damage to' therefore connotes a negative alteration in the tangible condition of property."), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021).

Furthermore, the inclusion of the "of" immediately following "loss" does not, as Plaintiff argues, operate to change the meaning of the language such that a loss of Plaintiff's ability to use the building would be covered. Rather, Plaintiff's interpretation ignores altogether the immediately preceding term, "physical." Indeed,

> Read together with the modifier 'physical,' the phrase 'physical loss of or damage to property' in this context plainly covers two scenarios: one where 'physical loss' occurs—which naturally refers to a situation where the value of the property as a whole 'disappear[s]' or 'dimin[ishes]'—and one where 'damage' occurs—that is, where the property is harmed but not destroyed.

*DeMoura v. Cont'l Cas. Co*., No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840, at *6 (E.D.N.Y. Mar. 5, 2021) (considering whether Plaintiff was entitled to business income coverage under insurance policy language identical to the instant action). Also contrary to Plaintiff's contention, it is not necessary to read "direct physical loss" as including loss of use to be distinct from "damage." (Pl.'s Opp'n at 12.) Indeed, the term loss includes "'theft or misplacement,' which would not constitute damage to the property[,]" and further loss could "extend to complete destruction of property, whereas 'damage' contemplates a lesser injury." *Michael Cetta, Inc.,* 506 F. Supp. 3d at 180 (emphasis omitted).[7]

---

[7] Plaintiff also makes much of the fact that the Policy does not contain an exclusion for viruses or pandemics. (Pl.'s Opp'n at 12–13.) However, the Court need not reach this argument given Plaintiff has failed to plead the threshold requirement of direct physical loss of or damage to the covered properties. *See, e.g.*, *DeMoura v. Cont'l Cas. Co*., No. 20-CV-2912 (NGG) (SIL), 2021 WL 848840, at *7 (E.D.N.Y. Mar. 5, 2021) ("Because Plaintiff has failed to state a claim for relief under the provisions discussed above, the question of whether the Policy contains an exclusion for losses caused by virus or pandemic is moot.").

Moreover, a reading of the Policy as a whole further supports the conclusion that actual, physical damage is required for coverage to be triggered under either the Business Income provision or as an Extra Expense. That is, the Business Income provision, provides for pay for the actual loss of business income during "*the period of restoration*." (Cleary Decl. Ex. A at 39 (emphasis added).) Likewise, Extra Expense includes only "reasonable and necessary expenses incur[ped] during the *period of restoration*." (Cleary Decl. Ex. A at 17–18 (emphasis added).) Crucial to both, the "period of restoration" is defined as the "period of time" that "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises" and "[e]nds on the earlier of . . . (1) [t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) [t]he date when business is resumed at new permanent location." (Cleary Decl. Ex. A at 34.) As Defendants argue, this definition necessarily implies that without tangible loss or damage that can be "repaired, rebuilt, or replaced," there is no coverage under the Policy. (Defs.' Mem. at 17–18.)

Plaintiff cites several cases which purportedly stand for the proposition that "loss of use, without any corresponding structural damages, has been recognized as a plausible claim[.]" (Pl.'s Opp'n at 9.) However, Plaintiff's cited authority, none of which applies New York law, is against the weight of well-established New York precedent. Indeed, in the oft' cited *Roundabout Theatre Company v. Continental Casualty Company*, the Appellate Division of the New York Supreme Court considered whether the business interruption clause of an insurance policy covered losses resulting from an order by New York City's Office of Emergency Management denying access to the insured theater. 751 N.Y.S.2d 4, 5 (1st Dep't 2002). There, the coverage specifically insured against "loss of, damage to or destruction of property or facilities," which

8

plaintiff argued should be read to include loss of use of the premises. *Id.* (emphasis omitted). Ultimately, however, the Appellate Division determined "the language in the instant policy clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage." *Id.* at 8.[8] Such is the case here.

Plaintiff's argument is also against the weight of authority of district courts within the Second Circuit, which have considered nearly identical cases stemming from the COVID-19 pandemic. *See, e.g.*, *DeMoura*, 2021 WL 848840, at *6 ("[I]t is clear that "direct physical loss [of] or damage to property" requires actual, tangible harm to the property."); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259, at *8 (S.D.N.Y. Mar. 18, 2021) (report and recommendation) ("The requirement of some 'physical damage to property' to satisfy 'direct physical loss of or damage to property' is fatal to [Plaintiff's] position that its losses are covered under the Business Income provision."); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418 (JGK), 2021 WL 860345, at *2 (S.D.N.Y. Mar. 6, 2021) (acknowledging "the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss" and ultimately finding the same); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 Civ. 4471 (LGS), 507 F. Supp. 3d 482, 487 (S.D.N.Y. 2020) ("Nothing in the Complaint plausibly supports an inference that COVID-19 and

---

[8] Plaintiff argues Defendants' reliance on this decision is misplaced, given the language analyzed by the court omitted the word "of," in "loss of," which materially distinguishes it from the present case. (Pl.'s Opp'n at 7–8.) However, as Defendants point out, this argument is incorrect on the facts and law. (Defs.' Reply Mem. L. Supp. Defs.' Mot. Dismiss Compl. at 4–5, ECF No. 10-15.) On the facts, the relevant policy language in *Roundabout* also required "loss *of*, damage to, or destruction of" the property at issue. *Roundabout Theatre*, 751 N.Y.S.2d at 5. On the law, the court in *Roundabout* expressly considered and rejected Plaintiff's loss of use argument: "The IAS court's interpretation that the phrase 'loss of' must include 'loss of use of,' because otherwise 'loss of' would be redundant to 'destruction of,' is flawed." *Id*. at 8.

the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff."); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(Sr), 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) ("[T]his Court agrees with the overwhelming majority of courts to have considered this issue that plaintiffs cannot plausibly allege that this impact is the result of direct physical loss of or damage to covered property as required to establish coverage under their insurance policies."). Ultimately, this Court joins these several others in finding the plain language of the Policy requires tangible harm to the property.

Perhaps anticipating the Court's conclusion here, Plaintiff maintains, in the alternative, that the complaint adequately alleges physical loss or physical damage to its property. (Pl.'s Opp'n at 14–17.) In support, Plaintiff directs the Court to allegations in the complaint that: (1) four of the Plaintiff's employees tested positive for COVID-19 in three of Plaintiff's four offices; (2) that it is "well documented that COVID-19 physically infects and remains on surfaces of objections for up to twenty-eight days[;]" and (3) Plaintiff had to close their offices to have them disinfected as a result. (Pl.'s Opp'n at 14.) Plaintiff's argument fails for several reasons.

As Defendants point out, Plaintiff does not actually allege the presence of COVID-19 in any of its offices. Rather, the Plaintiff alleges only that four employees, from three separate offices, each tested positive for COVID-19. (Compl. ¶ 17.) Even if Plaintiff's complaint included allegations that its employees were present in the office while infected, this Court again agrees with other courts in this district that have determined the mere presence of the virus does not amount to physical damage such that the Business Income or Extra Expense coverage would be triggered. *See, e.g.*, *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021) ("Though

10

the virus has the potential to cause significant harm to people, the court is not aware of any scenario in which its presence can cause 'physical damage' to property such as a building, or other inanimate objects."). At bottom, this is simply insufficient to allow the Court to conclude that Plaintiff's covered properties might have been impacted.

B.     **Civil Authority Coverage**

Plaintiff seeks a declaratory judgment that "Governor Cuomo's Executive Order closing all non-essential businesses, including the Abrams, Fensterman offices, constitutes an act of civil authority prohibiting access to the covered premises." (Compl. at 5–6.)

The Civil Authority provision of the Policy extends Plaintiff's Business Income and Extra Expense coverage to losses caused by action of a civil authority. Specifically, action taken by civil authority "*that prohibits access to the described premises*." (Cleary Decl. Ex. A at 63 (emphasis added).) Importantly, "the civil authority action must *be due to direct physical loss of or damage to property* at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." (Cleary Decl. Ex. A at 63 (emphasis added).) By the terms of the provision, to demonstrate Civil Authority coverage may apply, Plaintiff needs to plausibly allege an order from a civil authority that (1) prohibited access to its premises and (2) resulted from direct physical loss of or damage to property at locations other than the covered premises. Defendants maintain that Plaintiffs have not sufficiently pleaded either. The Court agrees.

*First*, Plaintiff fails to sufficiently plead Governor Cuomo's Executive Order entirely prohibited access to the covered premises. While Plaintiff alleges the order "barred all of Abrams, Fensterman's employees from physically accessing their offices," this is contrary to the plain language of the order. (Compl. ¶ 20.) Indeed, the order instructs all businesses to "utilize, to the maximum extent possible, any telecommuting or work from home procedures that they

can safely utilize." (Cleary Decl. Ex. B at 2.) And even further, the order mandates "[e]ach employer shall reduce the in-person workforce at any work locations by 100%." (*Id.*) This language does not amount to an outright prohibition on access to properties covered by the Order. In so finding this Court joins several district courts within the Second Circuit that have refused to interpret the order in such a way. *See, e.g.*, *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 1:20-cv-4736-GHW, 2021 WL 2403088, at *8 (S.D.N.Y. June 11, 2021) ("The plain language of the Executive Orders limited the presence of in-person employees at the location, but notably did not prohibit access to the premises outright. There is no prohibition that prevents employers from accessing the property for any variety of reasons, such as sorting mail or collecting personal items."); *Food for Thought Caterers Corp.*, 2021 WL 860345, at *6 ("Governor Cuomo's Executive Order that the plaintiff claims to have ordered the closure of 'all non-essential businesses' stated instead that '[e]ach employer shall reduce the in-person workforce at any work locations by 100%' . . . [t]his workforce reduction requirement does not amount to denial of access to the property" (internal citation omitted)).

*Second*, Plaintiff fails to allege the order resulted from direct physical loss of or damage to property at locations other than Plaintiff's premises. Indeed, the complaint does not name any specific "location, other than described premises" that suffered any damage, nor does the complaint contain allegations establishing such damage at another location being the cause of the order. At most, Plaintiff seeks to argue in its opposition that the order resulted, in part, from claims that "COVID-19 was physically present in [Kings County Supreme Court]" which is "close in proximity to [Plaintiff's] Brooklyn offices." (Pl.'s Opp'n at 18.) Beyond the fact that this is not alleged in the complaint, Plaintiff's argument is otherwise wholly unsubstantiated and unpersuasive. And, indeed, the Court is not convinced Plaintiff would ever be able to

12

sufficiently allege the order resulted from direct physical loss of or damage to property. The weight of authority in this district is persuasive in determining the Executive Order was "issued in response to the rapid spread of the COVID-19 virus, and not on account of any physical loss or damage to any specific property." *Off. Sol. Grp., LLC*, 2021 WL 2403088, at *8.

Accordingly, Plaintiff fails to state a claim for Civil Authority coverage and Plaintiff's request for declaratory judgment on this ground is denied.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       December 3, 2021

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

---

[9] Defendants' also argue Plaintiff's claims against CNAF should be dismissed because CNAF is not a proper party to this action. (Defs.' Mem. at 23–24.) Having determined Plaintiff's request for declaratory judgment should be dismissed in its entirety, the Court need not reach this argument.

13